**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Fidelity & Deposit Co. of Maryland,** ) | |
| Plaintiff, ) | |
| ) | No. 20 C 6105 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| **TRG Venture II, LLC,** ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Fidelity & Deposit Co. of Maryland's appeal of the Bankruptcy Court's ruling, *In re Kimball Hill, Inc.*, 620 B.R. 894, 899-900 (Bankr. N.D. Ill. 2020), is denied and the decision of the Bankruptcy Court is affirmed. Civil case terminated.

**STATEMENT**

**Background**

This is the second time this case has been on appeal from the Bankruptcy Court. The Court assumes knowledge of the lengthy background facts and voluminous record in this case and fully incorporates its initial ruling on this case. *Fid. & Deposit Co. of Md. v. TRG Venture Two, LLC*, 19 C 389, 2019 WL 5208853, at *1 (N.D. Ill. Oct. 16, 2019). The Court includes a brief summary of the facts as set forth in the Court's order on the initial appeal.

> Kimball Hill, Inc. ("KHI"), a residential construction company, owned five undeveloped properties at issue (the "Properties"), which are located in five different municipalities in Illinois. Anticipating development of subdivisions on the Properties, KHI entered into Annexation Agreements with the municipalities to construct improvements on the land, such as sidewalks, curbs, and sewers. Pursuant to the Annexation Agreements, KHI obtained surety bonds from Fidelity and Deposit Company of Maryland ("F&D"), the appellant in this case, to secure KHI's performance.
>
> KHI filed for liquidation under Chapter 11 of the Bankruptcy Code in April 2008. F&D filed proofs of claim in the bankruptcy proceeding and, on March 12, 2009, the Bankruptcy Court entered a Confirmation Order confirming KHI's liquidation plan. F&D accepted the terms of the Plan. The Plan Release provided that claimholders voting to accept the Plan "shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released the Debtors . . . and the Released Parties from any and all Claims." The Plan also includes a section entitled "Miscellaneous," which provides that "[t]he right, benefits, and

> obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any . . . successor or assign . . . . of each Entity [(the "Miscellaneous provision")]." The Confirmation Order and Plan enjoined all parties subject to the Plan Release from pursuing a released claim against a party covered by the Plan Release.
>
> TRG Venture Two, LLC ("TRG") acquired the Properties from a third-party entity that had purchased them from the bankruptcy trust; TRG thus became responsible for the obligations under the Annexation Agreements that KHI had previously entered into with the Municipalities. Certain of the Municipalities filed suit in state court, seeking performance under the Annexation Agreements from TRG directly and F&D as the surety. In the state-court lawsuits, F&D filed counterclaims or third-party claims against TRG, alleging that, in the event F&D was found liable as a secondary obligor, TRG was liable to F&D under theories of indemnity and/or unjust enrichment. While TRG initially obtained dismissal of F&D's claims against it, these dismissals were reversed on appeal. *See, e.g., Vill. of Montgomery v. Fid. & Deposit Co. of Md.*, No. 2–15–0571, [20]16 WL 1621971, at *7 (Ill. App. Ct. Apr. 21, 2016).
>
> Subsequently, after six years of state-court litigation, TRG filed in Bankruptcy Court a Motion for Entry of an Order Enforcing Confirmation Order, asserting for the first time that the Plan Injunction barred F&D's state-law claims for indemnity and unjust enrichment. The Bankruptcy Court granted the motion, finding that in consenting to the Confirmation Plan, F&D had released its state-law claims against TRG, and awarded $9,539,768.54 in [contempt] damages to TRG.

*Id*. at *1-2 (internal parenthetical omitted).

This Court denied F&D's first appeal as to the substantive bankruptcy issues but remanded the case to the Bankruptcy Court to consider intervening Supreme Court law on the issue of contempt. *Id*. at 5-6 (citing *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019)). On remand, after two hearings and additional briefing, the Bankruptcy Court reinstated its prior judgments, including the one finding F&D in contempt. *In re Kimball Hill, Inc*., 620 B.R. 894, 899-900 (Bankr. N.D. Ill. 2020). F&D appeals the Bankruptcy Court's finding of contempt after remand.

**Analysis**

The Court reviews the Bankruptcy Court's legal conclusions de novo and its factual findings for clear error. Fed. R. Bankr. P. 8013; *In re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017). As an initial matter, the Court sees no basis on which to revisit its earlier decision affirming the Bankruptcy Court's conclusion that F&D violated the Confirmation Order by pursuing enjoined claims in state court that it had voluntarily released against KHI's successor, TRG. The Court only addresses whether the Bankruptcy Court properly held F&D in contempt under *Taggart* for having pursued those state-law claims, which were premised on F&D's contention that TRG was not a released party under the Plan Injunction and Confirmation Order.

In analyzing the contempt standard in *Taggart*, the Supreme Court concluded that the proper standard for contempt is "based on the traditional principles that govern civil contempt," and "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." 139 S. Ct. at 1804. "In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id*. at 1799.[1]

Contempt Finding

In assessing whether F&D should be held in contempt, the Bankruptcy Court engaged in a two-step analysis, "requiring TRG, as the movant, to set forth the facts that warrant relief and requiring F&D, as the respondent, to carry the burden of any uncertainty in the decree." *In re Kimball Hill,* 620 B.R. at 905. The Bankruptcy Court set forth, again, the history of F&D's conduct that formed the basis for the contempt finding, stating in part as follows:

> . . . F&D issued bonds in favor of municipalities to secure the completion of residential projects built by the Debtors [i.e., KHI]. During the recession of 2008, the Debtors filed for bankruptcy relief in April 2008. F&D filed claims in the Debtors' bankruptcy cases and voted its claims in favor of the Debtors' Plan, which was confirmed by this court. The Plan called for a liquidating trust to be created with the limited purpose of liquidating the Debtors' assets and distributing recovery to the Debtors' creditors. The Plan also released all claims by those that voted in favor of the Plan and both the Plan and the Confirmation Order contained an injunction prohibiting those parties whose claims had been released from pursuing the same claims.
>
> After the Plan was confirmed, the Plan Administrator filed objections to some of F&D's claims based on theories of duplicity and failure to provide documents supporting the claims. After litigation on the same, the court sustained the Plan Administrator's objections, which ruling was affirmed by the District Court.[2]

---

[1] Although the Bankruptcy Court questioned whether the contempt standard articulated in *Taggart* applies to violations of injunctions in a Chapter 11 Plan Injunction and Confirmation order, F&D, the appellant, does not raise the issue on appeal. TRG notes, without conclusion, that the Bankruptcy Court stated that "there are substantive and policy-based reasons why *Taggart* may not extend beyond contempt cases of a Chapter 7 individual's form discharge order, particularly to Chapter 11 plans." (Appellee's Br., Dkt. # 19, at 36.) In a footnote, TRG then states that "the Court may summarily affirm if *Taggart* does not apply." *Id*. n.112. TRG's oblique comments do not make clear whether the issue of *Taggart*'s applicability is currently before the Court. Because *Taggart*'s applicability to the instant case was not included in F&D's statement of issues on appeal, and TRG only indirectly references the issue without argument, the Court does not address whether the *Taggart* standard should apply here.

[2] *See In re Kimball Hill, Inc*., No. 13 C 07146, 2014 WL 5615650, at *5 n.9 (N.D. Ill. Nov. 4, 2014) (stating that F&D's "efforts to preserve their various individual claims amount to an

3

> In accordance with the Plan, the Plan Administrator also sold a portion of the Debtors' assets to TRG. F&D, despite having its claims released and being enjoined by the Plan Injunction, pursued TRG in the State Court Lawsuits for payment of those same claims. F&D had never pursued a party that had purchased real property through a sale under section 363(f) of the Bankruptcy Code, but F&D's Litigation Committee decided "that pursuing purchasers was a 'unique' and 'one of a kind' suit." TRG successfully obtained dismissal from the State Court Lawsuits, but F&D appealed. While those appeals were largely unsuccessful, two of the appeals resulted in reversals in the Elgin and Montgomery Lawsuits.
>
> Even after TRG filed the [instant] Motion [to enforce the Confirmation Order] with this court, F&D did not stop pursuing TRG on its claims. The success in the Elgin and Montgomery Lawsuits emboldened F&D to pursue another purchaser, LCP, with similar claims. LCP, however, filed a similar request to the Motion and the court found there that F&D violated the Plan and the Confirmation Order's injunction by pursuing the released claims. After that finding, F&D settled the claims against it by LCP.
>
> As is its right, F&D has disputed every decision by this court, filing motions to amend and repeating arguments through subsequent stages that the court has already determined. F&D has repeatedly informed the court that it will appeal every decision made not in its favor, including last month at the court's determination to enter a final decree.
>
> Despite F&D's fervor, nothing has changed regarding this court's earlier determination of F&D's violations, which determination was affirmed by the District Court. Despite voting for the Plan, F&D has repeatedly and knowingly violated the terms of the Plan Injunction and the Confirmation Order. It has pursued claims that it knew were released on theories where it knew the law was settled against it. While F&D, over the course of its litigation with TRG, has developed theories why it should be allowed to do what it has done, these theories are both new and unavailing. F&D knew when it commenced its course of action against TRG that it was not permitted to act as it did, but did so anyway with the hope of obtaining a ruling running contrary to existing law.

*Id*. at 906-07. The Bankruptcy Court further stated:

> F&D has provided no holding from case law or statute to support the theories that F&D advances in the State Court Lawsuits—that a surety may pursue a purchaser of assets through a sale under section 363(f) of the Bankruptcy Code despite the surety having settled and released its claims in the bankruptcy itself. F&D's ar-

---

impermissible collateral attack on a settlement Plan that was confirmed over five years ago.") (Chang, J.)

4

> tificial, after-the-fact reasoning is not the measure of its actions. The measure is that F&D knew its actions were in contravention of applicable law when it took them. In [an earlier ruling], the court stated that "[t]he evidence, in fact, demonstrates clearly that if any party was testing the waters, it was F&D. F&D has had numerous dismissals of its theories by this and other courts, yet it has continued its efforts against purchasers of [the Debtors'] property." [*In re Kimball Hill, Inc*.] 595 B.R. 84, 102 [(Bankr. N.D. Ill. 2019)]. Those actions remain prohibited today, despite the novel theories that F&D has developed. F&D's argument that its actions were reasonable is unavailing.

*Id.* at 909. The Bankruptcy Court went on the state as follows:

> F&D knew the case law did not support its actions when it took them. Further, this court and the District Court have repeatedly told F&D that its claims were released in the Plan and enjoined by the Plan and Confirmation Order. . . . While F&D may have succeeded in convincing the state court that such a possibility exists, through the course of F&D's repeated arguments concerning the Motion, never once has F&D provided this court with any case law to support the result it desires. As this court previously stated:
>
>> Despite F&D's assertions that it has been vindicated by the appellate court rulings, neither the Elgin Decision nor the case which relies on its logic rules on the propriety of F&D's theory, rather they merely provide that half of F&D's claims are "sufficiently pled." Nothing in either decision reaches the issues addressed by this court in [an earlier ruling] and here today. F&D cannot for these reasons escape liability for damages stemming from its pursuit of TRG.
>
> . . . The evidence of F&D's pursuits in multiple forums and lack of supporting case law demonstrate what this court has already found—that F&D's pursuit of TRG was a gamble by F&D to overturn precedent and create new law that would allow it double recovery, against both bankruptcy estates and subsequent purchasers of bankruptcy property.

*Id*. (internal citations omitted). The Bankruptcy Court thus concluded that

> [t[here is no doubt, let alone a fair ground of doubt, that F&D's actions [in pursuing the state-court claims against TRG] were unlawful under the orders entered in the case. The court thus finds that in determining the Motion [by TRG to enforce the Confirmation Order] . . . , the actions of F&D rise to the level of civil contempt set forth by the Supreme Court in *Taggart*.

*Id.*

      F&D contends that the Bankruptcy Court committed reversible error in holding F&D in contempt because it had at least one objectively reasonable basis for arguing in state court that the

term "released parties" might not include TRG. (Appellant's Br., Dkt. # 18, at 31-42.) According to F&D, "multiple legitimately contested issues had to be decided before it could be concluded that F&D's suits against TRG violated the Plan Injunction and Confirmation Order, let alone whether F&D also should be held in contempt for that violation." (*Id*. at 26.) These include:

> (1) was TRG within the definition of 'Released Parties'?; (2) if not, could the Miscellaneous Provision be employed to enlarge [the] definition of this term through its reference to "successors" to the Debtors?; (3) if it could, did the undefined terms "successors" necessarily include "purchasers of Debtors' property"?[;] (4) if so, did such purchasers also include entities that did not actually purchase property from the Debtors[] themselves?; and (5) in making these determinations, should ambiguities be resolved against TRG as the benefitting party?

(*Id*. at 26-27.)

Assuming arguendo that F&D's arguments were raised before the Bankruptcy Court with respect to its contempt finding,[3] the Court concludes that F&D is not entitled to relief on this issue. Regarding F&D's arguments about the Miscellaneous provision, the Plan language and intent is clear -- it stated that KHI would shut down operations and turn its assets over to the Trust, and that creditors (i.e., F&D) would release all claims in exchange for receiving distributions. Accepting F&D's contention that it was reasonable to pursue its state-court claims against TRG in the face of the Plan Release would require flouting the purpose behind a Plan Confirmation generally. *See In re S. Beach Sec., Inc.*, 606 F.3d 366, 376 (7th Cir. 2010) ("To be in good faith a plan of reorganization must have a true purpose and fact-based hope of either 'preserving [a] going concern' or 'maximizing property available to satisfy creditors.'") (citation omitted). It is also unfounded under any reasonable reading of the release under state contract law. *See In re Kimball Hill, Inc.*, 565 B.R. 878, 901 (Bankr. N.D. Ill. 2017) ("The court can find nothing in Illinois law that supports F&D's contention that such law would allow a party to consensually, contractually release all claims and later reassert such claims against a successor; F&D has offered no Illinois law to that effect."). As the Bankruptcy Court noted in its initial contempt ruling, "[r]eading the Release and Plan Injunction in the manner urged by F&D would render the protections to successors and assigns meaningless." *In re Kimball Hill,* 565 B.R. at 900–01. The Court finds no basis on which to conclude that the Bankruptcy Court erred.

Moreover, to the extent F&D contends that the Release and Miscellaneous provisions, and the reference to "successors," were ambiguous, any purported ambiguity in the Plan Release language must be examined in the context of the Plan Confirmation, *see Vitalis v. Sun Constructors, Inc.*, No. 2005-0101, 2020 WL 4912298, at *10 (D.V.I. Aug. 20, 2020) (in a post-*Taggart* contempt case, noting that "[w]hen interpreting any court order, 'it is necessary to examine the context of the order'") (citation omitted), which is to provide a clear-cut process by which KHI could liquidate its assets. *In re Kimball Hill,* 2014 WL 5615650, at *5 (rejecting a separate collateral attack on the Plan and noting that "'[a]fter the orders of confirmation and consummation have been entered, finality becomes paramount'") (citation omitted).

---

[3] F&D does not specify which of these arguments were raised before the Bankruptcy Court in the context of the contempt ruling.

F&D also asserts that "there is authority for the proposition that a general release like the Plan Release cannot be interpreted to release unidentified third parties." (Appellant's Br., Dkt. # 18, at 34.) But TRG is not an unidentified third party; as already noted, the Bankruptcy Court found it is a "successor," which is expressly provided for in the Plan. Moreover, F&D's contention contradicts the statement that F&D made to this Court in its brief on the original appeal before this Court, in which it admitted that the Plan "Release bars creditors from pursuing claims against third-party purchasers to the extent those claims are dependent on claims such creditors previously had against the Debtors." (TRG Supp. App'x, Dkt. # 19-6, at TRG 01606). Further, while F&D relies on cases and authority to argue that courts should approach non-debtor releases with caution, the Bankruptcy Court concluded that TRG, as a successor, was a "released party" under the Plan Release and Miscellaneous provision of the Plan; thus, authority regarding non-debtor third-party releases is inapplicable.

In addition, F&D contends that the Plan Release must have been ambiguous since TRG did not assert it as a defense to F&D's indemnity claims for six years—in other words, if it was so clear that F&D was violating the Plan Release in pursuing the indemnity claims in state court, why did it take so long for TRG to move to enforce the Plan Release before the Bankruptcy Court? (Appellant's Reply, Dkt. # 20, at 11.) But success on this point does not mean that the imposition of contempt sanctions was in error because TRG's understanding of the Plan Release is irrelevant to whether F&D has an objectively reasonable basis for its state-law claims. Nor do F&D's attempts to distinguish several cases relied upon by the Bankruptcy Court, including *In re Gravel*, 601 B.R. 873 (Bankr. D. Vt. 2019) and *In re Renfrow*, 629 B.R. 83 (Bankr. N.D. Okla. 2021), alter the Court's decision. The Bankruptcy Court has stated, in myriad ways, that F&D has "repeatedly and knowingly" violated the terms of the Plan Injunction and Confirmation Order, and that F&D has provided no authority for its position except "artificial," "novel," and "unavailing" arguments that it has never before used to pursue a purchaser of assets in the relevant setting. The Court can ascertain no basis on which to find the Bankruptcy Court's conclusion in this regard was erroneous.

### *Taggart* Standard

In addition to challenging the substantive finding of contempt, F&D further argues that the Bankruptcy Court erred in applying a subjective standard to determine whether *Taggart* standard was satisfied. But the Bankruptcy Court did not apply a subjective standard. It determined whether a fair ground of doubt existed as to the lawfulness of F&D's lawsuits in state court, reiterating the history of F&D's position as follows:

> [T]hrough the course of F&D's repeated arguments concerning [TRG's motion for entry of an order enforcing the Confirmation Order], never once has F&D provided this court with any case law to support the result it desires. . . . The evidence of F&D's pursuits in multiple forums and lack of supporting case law demonstrate what this court has already found—that F&D's pursuit of TRG was a gamble by F&D to overturn precedent and create new law that would allow it double recovery, against both bankruptcy estates and subsequent purchasers of bankruptcy property.

7

> There is no doubt, let alone a fair ground of doubt, that F&D's actions were unlawful under the orders entered in the case.

*In re Kimball Hill,* 620 at 909.

### Burden of Proof

Nor is the Court persuaded by F&D's contention that the Bankruptcy Court erroneously shifted the burden of proof to F&D to demonstrate that the *Taggart* standard had not been satisfied. The Bankruptcy Court required TRG to set forth the facts warranting relief, which it did (and of which the Bankruptcy Court was already well aware), and then required F&D to demonstrate there was a reasonable basis for the position it took in the state-court lawsuits. *In re Kimball Hill*, 620 B.R. at 905. F&D did not bear the burden of disproving contempt; rather, it was required to demonstrate that it possessed a legitimate legal basis for its state-court lawsuits, which was entirely appropriate under *Taggart*. *See Taggart*, 139 S. Ct. at 1802 (noting that the Supreme Court has "explained that a party's 'record of continuing and persistent violations' and 'persistent contumacy' justified placing 'the burden of any uncertainty in the decree . . . on [the] shoulders' of the party who violated the court order") (citation omitted). The Bankruptcy Court, which is intimately familiar with the history of this matter and the conduct of the parties, found F&D's conduct to be contumacious; it committed no error in setting up the contempt analysis as it did. Ultimately, F&D's argument regarding the burden of proof is a red herring; the Bankruptcy Court did not base its decision on either party's failure to meet the burden of proof, and F&D was given the opportunity to fully set forth its arguments in support of its contention that it had an objectively reasonable basis for its state-court claims. The Court finds no error in how the Bankruptcy Court allocated the burden of proof in this case.

### Factual Findings

This Court also finds that the Bankruptcy Court's factual findings were not clearly erroneous. A factual finding is clearly erroneous only where the appellate court is "left with the definite and firm conviction that a mistake has been committed." *In re Dimas*, 14 F.4th 634, 640 (7th Cir. 2021) (citation omitted). F&D contends that the Bankruptcy Court was wrong in finding that F&D had notice that its state-court approach was contrary to the express term of the Release. In that regard, the Bankruptcy Court stated that "F&D not only had notice of the terms of the Plan and the Confirmation Order entered with respect to the Plan, but affirmatively voted in favor of the Plan and its provisions," thus, "[t]here is no question that F&D had notice of the injunction contained in the Plan as reinforced by the Confirmation Order." *In re Kimball Hill,* 620 B.R. at 908. In support of its position, F&D points to the testimony of its corporate representative, Greg Kilburn, who testified that F&D did not know that it was consenting to the release of subsequent purchasers when it voted in favor of the Plan. (Appellant's Br., Dkt. # 18, at 47.) F&D also refers to other evidence it believed demonstrated that it had no notice that its conduct in state court was contrary to the Release. But the Bankruptcy Court clearly did not find that evidence persuasive, noting instead that

> F&D, despite having its claims released and being enjoined by the Plan Injunction, pursued TRG in the State Court Lawsuits for payment of those same

8

claims. F&D had never pursued a party that had purchased real property through a sale under section 363(f) of the Bankruptcy Code, but F&D's Litigation Committee decided "that pursuing purchasers was a 'unique' and 'one of a kind' suit."

*In re Kimball Hill,* 620 B.R. at 906. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Dimas*, 14 F.4th at 640 (citation omitted). Accordingly, the Court finds no error with the Bankruptcy Court's factual findings as to F&D's awareness of the unlawfulness of its conduct.

<u>Contempt Damages</u>

F&D next moves on to damages, asserting that the Bankruptcy Court abused its discretion in holding that TRG's damages, specifically, the decreased value in TRG's properties, were caused by F&D's state-court lawsuits.[4] The Bankruptcy Court conducted a four-day trial on damages, during which it heard evidence from both parties. TRG sought damages in the amount of $7,720,000.00 for the lost value of the Properties that resulted from the encumbrances caused by the state-court lawsuits. The Bankruptcy Court found that absent F&D asserting the claims at issue against TRG in state court, TRG would have been able to sell the Properties in 2012 for $9,435,000.00, and, as a result of F&D's suits, they could not be sold until 2018, at a lower value of $1,715,000.00. *In re Kimball Hill*, 595 B.R. at 102 (citation history omitted).

As to causation, the Bankruptcy Court stated as follows:

> In its Closing, F&D argues that no damages should be awarded because TRG has not demonstrated that its damages were caused by F&D's pursuit of TRG in the State Court Lawsuits. There is, however, sufficient evidence in this case of the State Court Lawsuits' effect on the ability of TRG to sell the Property.
>
> TRG has detailed its efforts to sell the Property while F&D pursued TRG in the State Court Lawsuits. Peter Kyte, the manager of TRG ("Kyte"), set forth TRG's efforts to sell the Property in his affidavit in support of TRG's damages request and in his testimony at the Trial. Kyte had numerous meetings with possible purchasers of the Property from 2011 to the time of the Trial. The only time that TRG received commercially reasonable offers was in 2014 after TRG had succeeded in obtaining dismissals in the State Court Lawsuits. Those offers fell through when F&D appealed the dismissals. TRG was unable to consummate the sale agreements as it could not represent that there was no pending surety litigation with respect to the Property. In contrast, following the Violation Decision, TRG entered into two sale agreements with respect to part of the Property. These agreements, however, contain provisions requiring the establishment of escrows to account for F&D's possible pursuit of the buyer.

---

[4] F&D's causation challenge is only to the Bankruptcy Court's calculation of lost property value and not its imposition of TRG's legal fees associated with the state-court litigation and enforcement of the injunction in the Plan Confirmation.

> Litigation regarding real property unquestionably clouds title and affects the ability of an owner to sell such real property. When [a party] asserts claims such as those asserted here, substantial claims that F&D argues run with the real property, the connection between the litigation and the marketability of the real property is not difficult to demonstrate. For example, title insurers customarily search for pending litigation. If litigation is pending, title insurers may not issue insurance as they will be bound to cover the claims therein.
>
> Even if title insurance can be obtained, or in the odd event it is not necessary, a purchaser is unlikely to close on a purchase when such closings routinely require a showing that liability arising from judgments pertaining to the property has been discharged. *See In re Thorpe*, 546 B.R. 172, 186 (Bankr. C.D. Ill. 2016). "When facts or circumstances are present that create doubt, raise suspicions, or engender uncertainty about the true state of title to the real estate, the transferee is not permitted to turn a blind eye but is, instead, required to investigate further. If he fails to make further inquiry, he will nevertheless be charged with notice of additional facts that may have been discovered by diligent inquiry. . . . Such a purchaser is placed on inquiry notice when facts revealed in the title search process would cause a reasonable person to think twice about completing the transaction." *Id.* at 185.
>
> The evidence and case law establish that during the pendency of F&D's claims against TRG and the Property, TRG's sale efforts have been frustrated. As a result, TRG has been required to maintain the unsold Property, which takes coordination and results in costs. The State Court Lawsuits have affected TRG's ability to sell the Property and thereby the value of the Property. It is also clear that the State Court Lawsuits caused TRG to incur legal fees.
>
> TRG thus has sufficiently shown the causal link between F&D's actions and damages—which damages are considered individually below. F&D's objection that its actions have caused no damages is, therefore, not well taken.

*In re Kimball Hill,* 595 B.R. at 101-02 (transcript citations and citation histories omitted).

"Damages awarded from civil contempt are . . . either coercive . . . or remedial in an attempt to restore losses from a violation of a court order." *In re Cordova*, No. 19AP00684, 2021 WL 5774400, at *12 (Bankr. N.D. Ill. Dec. 6, 2021). "Regardless of the nature of the award, the sanction must relate to or have been caused by a violation of a court order." *Id*.

F&D argues that the Bankruptcy Court's "causation findings constituted an abuse of discretion because they failed to accord any significance to the other obvious intervening causes of the drop in value of the Properties." (Appellant's Br., Dkt. # 18, at 52.) In general, "a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004). According to F&D, the Bankruptcy

10

Court erred "in assessing sanctions against F&D for harm not *solely* caused by F&D's lawsuits against TRG." (*Id*. at 54) (emphasis added).

F&D's challenge to the legal basis for the Bankruptcy Court's causation ruling is unavailing. F&D's position rests on a statement in *Merit Insurance Co. v. Calao*, No. 75 C 899, 1988 WL 74676, at *1 (N.D. Ill. July 7, 1988), that "a movant can only recover damages related to litigation with a third party if the movant can prove the damages were '*solely* caused by [Defendant's] wrongdoing," and "[i]f the third party's or the Plaintiff's actions are an *intervening or superseding* cause of [Plaintiff's] damages then no damages may be recovered." (Appellant's Br., Dkt. # 18, at 51) (emphasis added). The *Calao* court was addressing the plaintiff's contention that it was entitled to "recover as part of its damages . . . the attorneys' fees and expenses that it incurred in the course of [a satellite] litigation," because "it would not have incurred [the attorney's fees and] expenses but for the wrongdoing of [the defendant]." *Id*. The defendant argued that the plaintiff had "no right to recover these expenses from [the defendant] because the expenses were not caused *solely* by [the defendant], but rather by the misconduct of [a third party in the satellite litigation]." *Id*. (emphasis added). In resolving the plaintiff's request for damages, the court noted that under Illinois law, "where the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorneys' fees." *Id*. (citation and internal quotation marks omitted).

F&D points to no authority that the standard set forth in *Calao*, which is not a bankruptcy case, is applicable here. Moreover, F&D's instant appeal does not challenge the attorney's fees award in this case, which was the issue addressed in *Calao*. Thus, the Court is unpersuaded that the Bankruptcy Court was required to conclude that the reduced property values were the *sole* result of F&D's state-court lawsuits. As the Bankruptcy Court stated, damages from the violation of an order by the Bankruptcy Court merely "must *relate to or have been caused by* a violation" of the order. *In re Kimball Hill,* 595 B.R. at 100 (emphasis added). Indeed, as noted by the court in one of the cases F&D cites, *Johnson v. RJM Acquisitions, LLC*, No. 11 C 601, 2012 WL 930386 (S.D. Ill. Mar. 19, 2012), a bankruptcy court's award of damages includes those damages "*reasonably incurred* as a result of the violation [of the order]." *Id*. at *3 (emphasis added). F&D does not assert that the Bankruptcy Court's award does not meet this standard. Therefore, this basis for relief is denied.

In any event, F&D's contentions regarding purported "other causes" are unpersuasive. For example, F&D argues, among other things, that "[i]t cannot reasonably be denied that TRG was obligated under the Annexation Agreements to construct the Improvements, and the Municipalities had the legal right to require TRG to do so"; thus, "had TRG constructed the Improvements[,] there would have been no litigation in the state courts and no cloud of TRG's title," (Appellant's Br., Dkt. # 18, at 52); "any damages caused by F&D would have been attributable to F&D's decision to defend against the Municipalities' claims on the Performance Bonds, and not because F&D filed suit against TRG . . . ."; and "F&D may not be held responsible for any damages caused by

11

the claims against TRG by the Municipalities."[5] (*Id*. at 53.) But simply speculating on appeal as to other possible causes for TRG's damages is not sufficient to overturn the Bankruptcy Court's ruling. Not only does F&D neglect to indicate whether the argument was presented to the Bankruptcy Court, but it also does not point to any evidentiary basis in the record for its assertion. It is not this Court's role to assess arguments that are not tied to the evidence or the Bankruptcy Court's order. F&D has pointed to nothing for this Court to review, and the Court will not examine the record or the Bankruptcy Court's order to locate support for F&D's position.

In sum, the Bankruptcy Court's considered ruling on causation was based on the evidence presented to it, and it applied the proper legal standard. F&D presents no basis on which to find that the Bankruptcy Court abused its discretion.

**Conclusion**

For the reasons stated above, the Court denies F&D's appeal and affirms the Bankruptcy Court's decision.

**Date**: March 30, 2022

*Ronald A. Guzmán*
**Ronald A. Guzmán**
**United States District Judge**

---

[5] In its reply, F&D states that "TRG fails to offer any reason . . . to distinguish between the obvious negative effect these lawsuits [by Elgin and Yorkville against TRG] have had on the Properties, and any claims pursued by F&D." (Appellant's Reply, Dkt. # 20, at 25.)